[Cite as *In re A.V.O.*, 2012-Ohio-4092.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN )

IN RE: A.V.O.
    N.H.
    O.H.
    A.H.

C.A. Nos.    11CA010115
              11CA010116
              11CA010117
              11CA010118

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    10JC297659
              10JC297660
              10JC297661
              10JC297662

DECISION AND JOURNAL ENTRY

Dated: September 10, 2012

BELFANCE, Judge.

{¶1} Appellant, Amber O. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed her oldest minor child in the legal custody of the maternal grandmother and placed her three youngest children in the legal custody of their paternal grandfather. For the reasons that follow, this Court affirms.

I.

{¶2} Mother is the natural mother of one daughter, A.O., born February 18, 2003. The father of A.O. has never actively participated in these proceedings. Mother also has three sons, N.H., born August 1, 2007; O.H., born February 13, 2009; and A.H., born January 13, 2010. The boys' father participated in the trial court proceedings but is not a party to the appeal.

{¶3}   On May 19, 2010, Lorain County Children Services ("LCCS") filed complaints alleging that A.O. and N.H. were abused, neglected and dependent and that O.H. and A.H. were neglected and dependent children.  The agency alleged that there was drug abuse and domestic violence in the home, that Mother had untreated mental health problems and that she neglected the children and physically abused the two oldest children.

{¶4}   A.O. and N.H. were later adjudicated abused, neglected, and dependent children.  O.H. and A.H. were adjudicated neglected and dependent children.  Although the children were placed with various different relatives during the trial court proceedings, A.O. was ultimately placed with her maternal grandmother and all three boys were placed with their paternal grandfather.  LCCS eventually moved the trial court to place A.O. in the legal custody of the grandmother and to place the boys in the legal custody of their grandfather.  Alternatively, Mother moved the trial court to return all four children to her legal custody.

{¶5}   Following hearing before a magistrate, the magistrate decided that it was in the children's best interests for the respective grandparents to be awarded legal custody.  The trial court adopted the magistrate's decision and entered judgment.  Mother filed an objection to the magistrate's decision, asserting that it was not supported by the weight of the evidence, which the trial court later overruled.  Mother appeals and raises two assignments of error.

I.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION, WHEN IT ADOPTED THE DECISION OF THE MAGISTRATE GRANTING LEGAL CUSTODY OF A.V.O. TO THE MATERNAL GRANDMOTHER AND N.N.H., O.H., AND A.H. TO THE PATERNAL GRANDFATHER, WHERE THE PROPOSED LEGAL CUSTODIANS HAD FAILED TO EXECUTE A STATEMENT OF UNDERSTANDING FOR LEGAL CUSTODY AS REQUIRED BY [R.C.] 2151.353(A)(3).

{¶6} Mother contends that the trial court erred in granting legal custody to the maternal grandmother and the paternal grandfather because the proposed legal custodians did not file a statement of understanding with the court. R.C. 2151.353(A)(3) provides that the court should award legal custody to a person identified by one of the parties as a proposed legal custodian only if the person identified signs a statement of understanding that includes statements that the proposed custodian intends to and is able to assume responsibility for the child; that the custodian's responsibility is intended to be permanent and continues until the child reaches the age of majority, or longer if the child is still actively pursuing a high school diploma or equivalent; that the child's parents retain residual rights and what those rights include; and that the proposed custodian must be present in court to affirm his or her intent and understanding of this responsibility and "to answer any questions that the court or any parties to the case may have." R.C. 2151.353(A)(3)(a)-(d).

{¶7} LCCS first addresses this argument on the merits, arguing that the requirements of R.C. 2151.353(A)(3) were inapplicable here because it filed its motions for legal custody to the grandparents pursuant to R.C. 2151.415(3), which does not explicitly require a statement of understanding. LCCS cites no case law to support its statutory interpretation. Moreover, this Court has never addressed this legal issue, and there is a lack of consensus among the appellate districts as to the interpretation of this aspect of R.C. 2151.353(A)(3). *E.g.*, *In re R.K.*, 5th Dist. No. CT2012-006, 2012-Ohio-2739, ¶ 22-27; *In re G.M.*, 8th Dist. No. 95410, 2011-Ohio-4090, ¶ 10-12.

{¶8} This Court need not determine whether a statement of understanding was required in this case, however, because Mother failed to preserve the issue for appellate review. Mother did not raise an objection to the lack of a statement of understanding by the proposed legal

custodians at a time when the alleged error could have been corrected. She failed to object to the lack of a statement of understanding prior to the dispositional hearing, during the hearing, or through her written objections to the magistrate's decision. *See* Juv.R. 40(D)(3)(b)(iv). By failing to raise a timely objection, Mother has forfeited all but plain error. *Id*.

{¶9} To establish plain error, Mother must demonstrate that the trial court's failure to require the proposed legal custodian to submit a written statement of understanding affected "the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. Mother has failed to show that the absence of written statements from the proposed custodians affected the "basic fairness, integrity, or public reputation" of these proceedings.

{¶10} Although neither the grandmother nor the grandfather filed a statement of understanding as set forth in R.C. 2151.353(A)(3), they each appeared and testified at the legal custody hearing and were subject to cross-examination by the parents and the guardian ad litem. R.C. 2151.353(A)(3)(d). Each proposed custodian testified about their intentions to provide a home for the respective children and their ability to do so. Mother and Father cross-examined each grandparent. Nothing in the testimony of either grandparent suggests that they did not fully understand the commitment that they were making to the children as legal custodians or that they would be unable to perform that responsibility. *In re B.J.*, 12th Dist. No. CA2011-10-192, 2012-Ohio-3127, ¶ 35-36. Consequently, Mother has failed to demonstrate that the trial court's failure to require written statements of understanding from the proposed custodians, even if error, rose to the level of a plain error. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, WHEN OVER THE OBJECTIONS OF THE MOTHER, IT ADOPTED THE DECISION OF THE MAGISTRATE GRANTING LEGAL CUSTODY OF A.V.O. TO THE MATERNAL GRANDMOTHER, AND N.N.H, O.H., AND A.H. TO THE PATERNAL GRANDFATHER, WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Mother's second assignment of error is that the trial court's decision was not supported by the evidence presented at the legal custody hearing. Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a non-parent is based solely on the best interest of the child. *In re D.R.*, 9th Dist. No. 21218, 2003-Ohio-2852, ¶ 17; *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus (holding that an adjudication of abuse, dependency, or neglect is an implicit determination of the parent's unsuitability). "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶12} Furthermore, the juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead "leaves intact 'residual parental rights, privileges, and responsibilities.'" *In re Shepherd*, 4th Dist. No. 00CA12, 2001 WL 802209, *7 (Mar. 26, 2001), quoting former R.C. 2151.011(B)(19). The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of discretion. *In re M.S.*, 9th Dist. No. 22158, 2005-Ohio-10, ¶ 11. An abuse of discretion implies that the trial court's attitude is "unreasonable, arbitrary, or unconscionable." (Internal quotations and citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶13} Mother asserts that all of the children should have been placed in her legal custody instead of with their respective grandparents. Because the children were placed in two different homes, we will discuss the legal custody of the daughter, A.O., separately from the legal custody of the sons, N.H., O.H. and A.H.

Legal Custody of A.O.

{¶14} Although Mother asserts that A.O. should have been returned to her home and placed in her legal custody, the record fully supports the trial court's conclusion that legal custody to the maternal grandmother was in the best interest of the child. A.O., who was eight years old at the time of the legal custody hearing, had been living outside Mother's home for almost one year, living with several different relatives. At the time of the hearing, A.O. had been living with her maternal grandmother for approximately three months. According to the caseworker, the grandmother was meeting all of the child's needs. A.O. felt loved and secure in her grandmother's home and had expressed her desire to the caseworker and the guardian ad litem to remain there. Although A.O. told them that she loved Mother, she did not want to return to her home and was even reluctant to visit there overnight because she did not feel comfortable and usually had nightmares.

{¶15} A.O. had been removed from Mother's home because she had been abused and neglected by Mother. After she was removed from Mother's home, A.O. confided in her grandmother, the caseworker, and the guardian ad litem that Mother had often physically abused her, including choking her until she vomited, slamming her head, and hitting and bruising her.

{¶16} Although Mother had not been diagnosed with any mental illness, LCCS was concerned that she had not been honest during her mental health assessment and that she had undiagnosed problems that were not being addressed. Specifically, several witnesses testified

about observing Mother's mood swings, outbursts of uncontrolled anger and inappropriate behavior around all four of her children. Mother often got angry and behaved inappropriately with the children, the relatives who had temporary custody of them, and the father of the boys during the visits.

{¶17} Mother also had a pattern of involving herself with violent and abusive men, including the father of the boys, who resided with her at the time the children were removed. Despite taking domestic violence classes and telling LCCS that she would stay away from violent men, Mother told the caseworker several times throughout this case the father of the boys continued to physically abuse her or threaten to hurt her. Although the caseworker tried to encourage Mother to call the police or to get a court order to protect herself from further abuse, she never did so. In the opinion of the caseworker and the guardian ad litem, Mother had made no progress during the past year in improving her ability to protect herself and her children from violence.

{¶18} Moreover, Mother and A.O. did not have a close relationship. Mother did not visit A.O. on a regular basis, and A.O. had expressed a lack of desire to visit with Mother. When Mother did visit with A.O., there was little interaction between them. Numerous witnesses testified that they never saw any affection between Mother and A.O. Mother had shown no interest in the fact that A.O. was struggling in school. She did not help A.O. with her school work or attend school meetings. Although A.O. was at risk of being retained in the same grade, with the help of tutoring by the grandmother and the guardian ad litem, she made enough progress to be promoted to the next grade.

Legal Custody of N.H., O.H., and A.H.

{¶19} Mother's sons were placed in the legal custody of the paternal grandfather, who lived in Cincinnati. They had been living in his home for approximately eight months at the time of the hearing. The caseworker and guardian ad litem agreed that the grandfather was an appropriate custodian and supported his request for legal custody. His home had bedrooms established for the boys, a big yard where they could play, and they had assimilated into his home where he lived with his own nine-year-old son.

{¶20} The grandfather also testified that Mother continued to exhibit anger and other inappropriate behavior in the presence of her sons. The boys had seen her yelling at him or others and threatening to harm him. He described the "kind of scary" experience when she drove angrily behind him when he took the children to get something to eat, apparently because she was angry about something that occurred during their exchange of the children.

{¶21} LCCS was further concerned that Mother showed a lack of dedication to her young boys. At the time of their removal, the boys were very young, ranging in age from three months to three years old. During the next year that they lived outside Mother's home, however, she had little ongoing contact with them. Due to the distance between Cincinnati and Lorain County, the grandfather had agreed to drive the boys to visit in Lorain County with Mother and A.O. twice a month. Although LCCS tried to encourage Mother to drive down to Cincinnati on the alternate weekends, she refused to do so, even though she had transportation. Instead, she tried to convince the grandfather to drive them to Lorain County more often, but LCCS would not allow the young children to make such a long car trip more than twice a month. Consequently, Mother chose to see them only twice a month.

{¶22} When the grandfather brought the boys to Lorain County, they visited with Mother and their sister, A.O. Witnesses who observed the visits testified that Mother did not interact much with any of her children. Instead, she spoke to the adults present or talked or texted on her cell phone. The guardian ad litem and family members expressed concern that Mother did not seem to miss the children during the year that they were gone from her home, nor did she express love for them or dedication to them. They all further opined that Mother did not have the ability to parent any of the children and that their best interests would be served by remaining in their current placements.

{¶23} Given all of the evidence before the trial court, it could reasonably conclude that it was in the best interests of A.O. to be placed in the legal custody of her maternal grandmother and for the boys to be placed in the legal custody of their paternal grandfather. Therefore, the trial court did not abuse its discretion by granting the grandmother legal custody of A.O. and the grandfather legal custody of N.H., O.H., and A.H. Mother's second assignment of error is overruled.

### III.

{¶24} Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR

APPEARANCES:

HOLLACE B. WEIZEL, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and AMY L. PRICE, Assistant Prosecuting Attorney, for Appellee.