[Cite as *In re R.D.J.*, 2013-Ohio-1999.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF R.D.J., I.E.J., W.AJ., S.J.J. AND A.J., DEPENDENT CHILDREN | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 12 CAF 07 0046 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County
                             Court of Common Pleas, Juvenile
                             Division, Case Nos. 10-12-2836-01-C,
                             10-12-2837-01-C, 10-12-2838-01-C,
                             10-12-2839-01-C, 10-12-2921-01-C

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      May 5, 2013

APPEARANCES:

For Appellant M.H.:                      For Appellee: Delaware County
                                         Department of Job and Family
                                         Services:

PAMELLA LAMMON                           KATHRYN L. MUNGER
103 N. Union St.                         140 N. Sandusky Street, 3rd Floor
Delaware, OH 43015                       Delaware, OH 43015

*Baldwin, J.*

{¶1} Appellant M.H. appeals a judgment of the Delaware County Common Pleas Court, Juvenile Division, awarding legal custody of her daughter I.E.J. and her son A.J. to the foster families with which they resided and legal custody with protective supervision of W.A.J. and S.J.J. to their natural father. Appellee is the Delaware County Department of Job and Family Services.

## STATEMENT OF FACTS AND CASE

{¶2} Appellant is the natural mother of R.D.J. (dob 12/29/04), I.E.J. (dob 10/12/07), W.A.J. (dob 12/16/08), S.J.J. (dob 10/11/09), and A.J. (dob 12/10/10). A sixth child, A.J., was born on 2/19/12 and is not a part of the instant case. The natural father of the children, R.J., has never been married to appellant, but they live together.

{¶3} The family first came to the attention of Franklin County Children's Services (FCCS) due to concerns that appellant was not taking medication for bipolar disorder while caring for R.D.J. She was diagnosed with bipolar disorder, avoidant personality, anger control issues, and anxiety. R.D.J. remained in the custody of appellant and his father, with protective supervision. The parents were referred to parenting classes, counseling and Help Me Grow. Help Me Grow terminated services due to non-compliance. Protective supervision was terminated on October 2, 2006.

{¶4} The case was reopened in July of 2007. R.D.J. was adjudicated neglected and dependent and placed in the temporary custody of FCCS. I.E.J. was born during this time, and she also was placed in the temporary custody of FCCS from October 12, 2007 through January 14, 2009. When the children were returned in 2009, FCCS retained protective supervision over I.E.J. FCCS's concerns included

appellant's arrest for assaulting the father of the children, the father's arrest for outstanding traffic warrants, appellant's history of physical aggression, a pattern of unexplained bruising, and relationship and anger issues between the parents. During supervised visits, appellant had difficulty handling the children. She would sit on the couch and yell at the children and call them inappropriate names. Further, her mental health issues were not consistently treated.

{¶5} In September and October of 2009, FCCS investigated two incidents of unexplained bruising to I.E.J. She was placed outside the home from September 21, 2009 through October 19, 2009, while FCCS investigated. She was returned home and four days later she had a black eye. She was removed for thirty days by agreement of the parents while FCCS investigated.

{¶6} On December 9, 2009, the court in Franklin County removed all of the children from the home due to safety concerns. Despite parenting classes, the parents continued to struggle with parenting the children during visits. R.D.J. was struck in the face by appellant during an unsupervised visit in December of 2010. Appellant screamed at the caseworker and pushed the children's father and R.D.J. upon learning that future visits would be supervised due to R.D.J. being hit in the face during the unsupervised visit. When the foster parents arrived to pick up the children, I.E.J. ran down the street, clutching a doll. Appellant chased her and yelled, "give me my fucking toy back." The police were called after appellant grabbed the foster mother. Michele Reynolds, who was the caseworker during this time, described visits as very hectic and chaotic with the parents unable to handle the behavior problems of the children.

{¶7} In January of 2011, the case was certified to Delaware County as the result of a motion filed by FCCS. The parents moved to Delaware in 2010. The case plan in Delaware County required appellant to be referred to the Board of Developmental Disabilities, take parenting classes, complete an anger management program, participate in individual and couples counseling, and consistently take medication for her mental illness.

{¶8} Kelsie Clark was assigned as the caseworker on the case from January 10, 2011 to February 7, 2012. She found that sometimes the parents were cooperative, and sometimes they were defensive. The visits Clark supervised varied from chaotic with the children hitting each other and the parents yelling excessively, to more appropriate visits. The children were often physically aggressive toward each other and threw tantrums during visits. The parents were not always aware of the children's violence toward each other during visits. During one visit, R.D.J. pulled down his pants and told his sister I.E.J. to "suck his peepee." The parents were instructed after this incident to keep the children away from each other unless supervised.

{¶9} Despite continued concerns for the safety of the children during visits, the children were placed with their parents for an extended home visit in March and April of 2012. During this time, the director of the day care center the children attended reported multiple bruises to I.E.J., W.A.J. and S.J.J.

{¶10} Appellee filed a motion seeking permanent custody of the children on October 3, 2011. The case proceeded to a fifteen day trial in the Delaware County Common Pleas Court, Juvenile Division, beginning November 16, 2011, and

concluding on May 23, 2012. On April 9, 2012, the guardian ad litem for the children filed a motion to grant legal custody of the children to the two foster families where they were placed. During trial, the court dismissed the motion for permanent custody of R.D.J., as he had been returned to the legal custody of his father.

{¶11} The trial court overruled the motion for permanent custody. The court granted legal custody of I.E.J. and A.J. to the two separate foster families with which they had been residing. Legal custody of W.A.J. and S.J.J. was returned to father, with appellee retaining protective supervision.

{¶12} Both parents appealed. Father dismissed his appeal on April 12, 2013.

{¶13} Appellant assigns two errors on appeal:

{¶14} "I. WHETHER THE JUDGMENT OF THE TRIAL COURT WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT AWARDED LEGAL CUSTODY OF I.E.J. AND A.J. TO TWO SEPARATE SETS OF FOSTER PARENTS UNDER R.C. 2151.353."

{¶15} "II. WHETHER THE JUDGMENT OF THE TRIAL COURT KEEPING THE CASE ON W.A.J AND S.J.J. OPEN AFTER DENYING THE DELAWARE COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES' (DCDJFS) MOTION FOR PERMANENT CUSTODY IS AN ABUSE OF DISCRETION."

I.

{¶16} In her first assignment of error, appellant incorporates father's arguments from his brief in his dismissed appeal concerning the award of legal custody to two separate foster families, and also argues that the judgment was against the manifest weight of the evidence.

{¶17} Father argued that the motion for legal custody was not timely, the legal custodians did not sign a statement of understanding, and the legal custodians were not present throughout the entire hearing pursuant to R.C. 2151.353(A)(3), which provides:

{¶18} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

{¶19} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:

{¶20} "(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

{¶21} "(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any

high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.

{¶22} "(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

{¶23} "(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have."

{¶24} Appellant agreed to hear the motion for legal custody at the same time as the permanent custody motion. Tr. 871. Therefore, any error in the timing of the motion has been waived.

{¶25} Further, appellant failed to object to the failure of the court to require the foster families to sign a written statement of understanding, and has therefore waived all but plain error. *In re A.V.O.*, 9th Dist. Nos. 11CA010115, 11CA010116, 11CA010117, 11CA010118, 2012-Ohio-4092, ¶8. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long,* 53 Ohio St.2d

91, 372 N.E.2d 804 (1978); Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶26} Appellant has not demonstrated plain error in the court's failure to require the two foster families to sign a statement of understanding. Both foster mothers testified at trial that they were willing to accept legal custody and to allow visitation with the parents if they received legal custody.

{¶27} Appellant also argues that the foster parents were not present for the entire dispositional hearing as required by R.C. 2151.353(A)(3)(d). Again, appellant did not object, and in fact invited any error by moving for a separation of witnesses. Further, the statute does not require that the legal custodian be present for the entire hearing. Both foster mothers testified at trial and affirmed their willingness to become legal custodians and their understanding of what that status means, and they were subject to questioning by the parties.

{¶28} Finally, appellant argues that the judgment was against the manifest weight of the evidence because the siblings are now divided.

{¶29} On appeal, we will not reverse an award of legal custody absent an abuse of discretion. *In re Gales,* 10th Dist.. No. 03AP–445, 2003–Ohio–6309; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (2001). Abuse of discretion connotes more than an error of law or judgment. Rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "'[L]egal custody where parental rights are not terminated is not as drastic a remedy as permanent custody'." *In re A. W.-G.,* 12th

Dist. No. CA2003–04–099, 2004–Ohio–2298, at ¶ 7, quoting *Nice* at 455, 751 N.E.2d 552. Therefore, the trial court's standard of proof in legal custody proceedings is not clear and convincing evidence, as it is in permanent custody proceedings, but is merely a preponderance of the evidence. *Nice* at 455, 751 N .E.2d 552; *In re A. W.-G; In re Law,* 5th Dist. No.2003 AP 06 45, 2004–Ohio–117.

{¶30} The trial court's decision to award legal custody of I.E.J. to her foster family and separate her from her siblings is not an abuse of discretion or against the weight of the evidence. She has been out of the parents' home the majority of her life, and was placed with the foster family when she was two days old. She views the foster family as her own and does not want to visit her parents. Appellant has not formed a bond with I.E.J., speaks negatively to her during visits and is more aggressive in her handling of I.E.J. She returned home from visits with unexplained bruising, and there was evidence of violence between the children and evidence that appellant once pulled her out of the room by her ankles. On another occasion, I.E.J. vomited on her shirt on the car ride to a visit and appellant did not want her shirt changed. Appellant told I.E.J. that she was too fat and heavy to hold, and at another visit told I.E.J. that she's fat and smells bad. There was abundant evidence from which the court could conclude that I.E.J. is at best ignored and at worst treated badly when she is with her parents and her other siblings. The court did not abuse its discretion in awarding legal custody to the foster family.

{¶31} A.J. has hearing loss. The foster family has purchased a Baha band to aid in A.J.'s hearing. They have received training on use of the band and daily maintenance for the band. They further have worked with a hearing specialist and

with the school regarding A.J.'s specialized needs. Because of the band, A.J. is very sensitive to background noise and it is important that noise be minimized when he is wearing the band. As noted by the court, "The overwhelming theme throughout the testimony is that of chaos. The [J/H] home is generally loud. The children run, play and yell. While this may be normal for children of their ages, it is not conducive to [A.J's] specialized needs." The court did not abuse its discretion in awarding legal custody of A.J. to the foster family.

{¶32} The first assignment of error is overruled.

II.

{¶33} In her second assignment of error, appellant incorporates the argument made by father in his brief that the trial court did not have authority to award appellee protective supervision over W.A.J. and S.J.J. while awarding legal custody to father.

{¶34} Appellant relies on *In re C.B.*, 129 Ohio St. 3d, 231, 2011-Ohio-2899, 951 N.E.2d 398. In that case, the Ohio Supreme Court held that an order which denies a children services agency's motion to modify temporary custody to permanent custody, terminates the placement of temporary custody with the agency, and awards legal custody to a parent is a final, appealable order. *Id.* at syllabus. Nothing in that case prohibits a court from awarding legal custody to a parent and at the same time giving the agency protective supervision over the children.

{¶35} R.C. 2151.353(A) provides in pertinent part:

{¶36} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

{¶37} "(1) Place the child in protective supervision;

{¶38} "(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home, or in any other home approved by the court;

{¶39} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

{¶40} The statute does not limit a court to only one dispositional alternative, and the word "any" usually refers to one or more of a specific quantity. *In re Pryor*, 86 Ohio App. 3d 327, 337, 620 N.E.2d 973 (4th Dist. 1993). While as a practical matter most instances will involve the use of only one dispositional alternative, there is no rule of law which restricts the court's options. *Id.*

{¶41} In the instant case, there is abundant evidence to support the court's decision to place the children in protective supervision. The transcript is rife with testimony that the household is chaotic, the parents at times have great difficulty controlling the behavior of the children who are violent with each other, and the children often have unexplained bruising while in the care of the parents. Further, while the parents, particularly the father, have made progress on the case plan and in dealing with the children, the court and appellee remain concerned about appellant's mental illness as well as R.D.J.'s mental illness and the effect their problems could have on the household.

{¶42} The second assignment of error is overruled. The judgment of the Delaware County Common Pleas Court, Juvenile Division, is affirmed.

By: Baldwin, J.

Wise, P.J. and

Delaney, J. concur.

_____
HON. CRAIG R. BALDWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY

rad/CRB

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF R.D.J., I.E.J.,
W.A.J., S.J.J. AND A.J.,
DEPENDENT CHILDREN

:
:
:
:
:
:
:
:
:
:
:
:
:

JUDGMENT ENTRY

Case No. 12 CAF 07 0046

For the reasons stated in our accompanying Opinion on file, the judgment of the Delaware County Court of Common Pleas, Juvenile Division,  is affirmed.   Costs assessed to Appellant.

_____
HON. CRAIG R. BALDWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY