[Cite as *In re W.A.*, 2013-Ohio-3444.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. W. Scott Gwin, P. J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| W.A., JR. | Case No. CT2013-0002 |
|  | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 21130114 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 1, 2013 |

APPEARANCES:

| For Appellant | For Appellee |
|---|---|
| JOHN D. WEAVER<br>542 South Drexel Avenue<br>Bexley, Ohio  43209 | MARIA N. KALIS<br>ASSISTANT PROSECUTOR<br>27 North Fifth Street, Post Office Box 189<br>Zanesville, Ohio  43702-0189 |

*Wise, J.*

{¶1} Appellant-Mother Kirsten Miller appeals the decision of the Court of Common Pleas, Muskingum County, Juvenile Division, which granted legal custody of her son, W.A., to a non-relative in a dependency/neglect action initiated by Appellee Muskingum County Children Services ("MCCS"). The relevant facts leading to this appeal are as follows.

{¶2} On July 11, 2011, Appellee MCCS took emergency custody of W.A., born in 2009, and filed with the trial court a complaint alleging that W.A. was a neglected or dependent child as defined in R.C. 2151.03(A)(2) and R.C. 2151.04(C). The concerns at that time included appellant's history of leaving W.A. with inappropriate caregivers, including an alleged father of the child who was then homeless and had been staying at a crack house, and that the child was dirty and had lice.[1] W.A. was placed in shelter care under the temporary custody of the agency following a shelter care hearing on July 11, 2011.

{¶3} W.A. was placed in foster care following his removal by MCCS. On August 11, 2011, following a home study by the agency, W.A. was moved from a temporary foster placement to a foster placement with Amanda Brunton, who is not related to the child. Following a hearing on September 29, 2011, W.A. was adjudicated to be a neglected and dependent child. The trial court held a dispositional hearing on the same day, and W.A. was placed in the temporary custody of Amanda Brunton with protective supervision granted to the Agency.

---

[1] The record indicates that there is an alleged father, William A., living in a rehab facility in Florida. In addition, service was made by publication on an unknown alleged father. *See* Tr. at 3, 18.

{¶4} On June 18, 2012, the agency filed a motion to modify temporary custody to legal custody to Ms. Brunton, and a motion to terminate protective supervision. The trial court held a hearing for both motions on September 11, 2012 and issued a judgment entry on December 3, 2012 terminating protective supervision of the agency and awarding legal custody of the child to Ms. Brunton.

{¶5} On, January 2, 2013, appellant filed a notice of appeal. She herein raises the following three Assignments of Error:

{¶6} "I. THE TRIAL COURT ERRED IN AWARDING LEGAL CUSTODY TO A NON-PARENT WHO FAILED TO SIGN A STATEMENT OF UNDERSTANDING AS REQUIRED UNDER R.C. 2151.353(A)(3).

{¶7} "II. THE TRIAL COURT'S DECISION AWARDING LEGAL CUSTODY TO AMANDA BRUNTON WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} "III. APPELLANT WAS PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL."

I.

{¶9} In her First Assignment of Error, appellant contends the trial court committed reversible error by awarding legal custody of W.A. to Amanda Brunton, a non-relative, without a signed statement of understanding as set forth in R.C. 2151.353(A)(3). We disagree.

{¶10} In Ohio, the statutorily permissible dispositional alternatives in a dependency, neglect, or abuse case are enumerated in R.C. 2151.353(A). *See, e.g.*, *In re S.Y.* , Tuscarawas App.No. 2011AP04 0018, 2011-Ohio-4621, ¶ 31. In particular, R.C. 2151.353(A)(3) provides: "If a child is adjudicated an abused, neglected, or

dependent child, the court may make any of the following orders of disposition:* * * Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:

{¶11} "(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

{¶12} "(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. ***.

{¶13} "(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

{¶14} "(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have."

{¶15} In the case sub judice, there is no indication in the record that Amanda Brunton, who was identified as the proposed legal custodian in the agency's motion for disposition, ever signed a statement of understanding under R.C. 2151.353(A)(3). However, it is undisputed that appellant and her trial counsel never objected on such grounds or brought the issue to the attention of the trial court. By failing to raise a timely objection regarding the requirements of R.C. 2151.353(A)(3), a parent forfeits all but plain error. *See In re A.V.O.*, Lorain App.Nos. 11CA010115, 11CA010116, 11CA010117, 11CA010118, 2012-Ohio-4092, ¶ 8. *See*, *also*, *In re Bouska*, Tuscarawas App.No. 2007AP090063, 2008-Ohio-3277, ¶ 35, (holding that where the mother had "failed to object to the lack of the proposed legal custodians at the dispositional hearing" under R.C. 2151.353(A)(3), mother had waived all but plain error). However, the doctrine of plain error is limited to exceptionally rare cases in which the error, left unobjected to at the trial court, rises to the level of "challenging the legitimacy of the underlying judicial process itself." *See Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 122, 679 N.E.2d 1099.

{¶16} The transcript of the dispositional hearing of September 11, 2012, before us reveals that Ms. Brunton obtained an approved home study by MCCS approximately in August 2011, following which the agency placed W.A. with her. See

testimony of social worker Cathy Loucks, Tr. at 5-7. The guardian ad litem further recommended that legal custody be awarded to Ms. Brunton. See GAL Report, September 10, 2012. We surmise that the legislative purpose of the signed statement of understanding under R.C. 2151.353(A) is to help insure that prospective legal custodians are apprised of the significant responsibilities they will undertake. Appellant does not direct us to anything in the present record to suggest Ms. Brunton was not aware of such responsibilities. Under these circumstances, we do not find the existence of plain error regarding the lack of the signed statement by the child's legal custodian.

{¶17} Appellant's First Assignment of Error is overruled.

II.

{¶18} In her Second Assignment of Error, appellant contends the trial court's granting of legal custody to Amanda Brunton was against the manifest weight of the evidence. We disagree.

{¶19} Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The Ohio Supreme Court has also explained: "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal*

*Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273. Likewise, "[e]very reasonable presumption must be made in favor of the judgment and the findings [of the juvenile court]. * * * If the evidence is susceptible to more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, and most favorable to sustaining the [juvenile] court's verdict and judgment." *In re: MB,* Summit App.No. 21812, 2004–Ohio–2666, citing *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350. It is well established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096. In contrast, as an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App.No. CA–5758. In manifest weight analyses, a reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Hunter v. Green,* Coshocton App.No. 12–CA–2, 2012–Ohio–5801, ¶ 25, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179.

**{¶20}** We reiterate that this case did not result in a grant of permanent custody to the agency and a full termination of parental rights. Despite the differences between a disposition of permanent custody and a disposition of legal custody, some Ohio courts have recognized that "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody

decisions." *In re A.F.,* Summit App.No. 24317, 2009–Ohio–333, ¶ 7, citing *In re T.A.,* Summit App.No. 22954, 2006–Ohio–4468, ¶ 17.

**{¶21}** As well summarized in the briefs, during the hearing on the agency's dispositional motion on September 11, 2012, MCCS presented testimony from two witnesses: Cathy Loucks, the agency case worker for W.A. and Sara Joseph, the agency family stability worker for appellant. It appears that MCCS intended to call Amanda Brunton and possibly other persons as rebuttal witnesses, but the trial court indicated that the allotted time for the hearing had been exhausted. *See* Tr. at 120.

**{¶22}** According to Loucks, the first goal in Appellant's case plan was that she needed to maintain her health following kidney-related issues that required hospitalization; however, appellant has satisfied this goal and has not been hospitalized since September 8, 2011. At the hearing, Loucks opined that appellant had no medical issues that would prevent her for caring for the child. *See* Tr. at 7-8. However, when appellant later took the stand, she asserted that she had disabilities in the form of "kidney problems, depressant [sic] and bipolar." Tr. at 80.

**{¶23}** The next goal of the case plan was that appellant would work on parenting and housing issues with a family stability worker. *Id.* Loucks testified that appellant had stayed in approximately twelve locations since W.A.'s removal. Tr. at 8-14. These included a homeless shelter for women, some locations where appellant had spent "two or three days," and the homes of family members where appellant stayed. Tr. at 10-11. Loucks also testified that appellant had found more stable housing in "May or June of [2012]" and was added to a lease for that location in July 2012. Tr. at 11.

Loucks testified that appellant's present apartment was "appropriate and safe for a child." Tr. at 14.

**{¶24}** The next requirement of the case plan was that appellant would obtain mental health counseling. Tr. at 19. This was due to appellant's issues of stability and an earlier self-report of depression. *Id.* Appellant completed a mental health assessment in July 2012. Tr. at 20. The recommendation from that assessment was that appellant should continue to receive counseling, which Loucks testified appellant was doing, albeit with a different counselor. *Id.* Loucks also noted that while appellant has been consistently visiting with W.A. since April 2012, she had missed thirty visits in the year 2012.

**{¶25}** Loucks also testified regarding appellant's income and employment. Tr. at 18. Appellant has been relying on her husband Eric's social security (SSI) income, although she was purportedly applying for her own benefits. Tr. at 19. Sara Joseph also testified regarding appellant's financial situation. Joseph agreed that if they stayed on a budget, the household income of appellant and her husband was "adequate to care for a child." Tr. at 43. Joseph also testified that appellant began taking parenting classes on May 29, 2012, and that she completed those classes prior to the hearing. Tr. at 38-39. Joseph also offered testimony regarding an incident between appellant and her husband. Tr. at 44-45. Appellant's husband was charged in that incident with domestic violence, which was later reduced to disorderly conduct. Appellant testified that she did not mean to report that her husband had punched her. Tr. 94-96.

**{¶26}** Joseph nonetheless testified that appellant's present husband, Eric, is a "good support person for her" and that he is "encouraging." Tr. at 43-44. Loucks

testified that appellant's husband had completed an anger management assessment and that he was not required to complete any follow-up. Tr. at 34. Neither Loucks nor Joseph testified that appellant's husband should not be around W.A., nor did they testify that his presence would not be in W.A.'s best interests.

{¶27} Appellant has two other children in addition to W.A. Custody of appellant's other son was granted to a grandmother by the Muskingum County Domestic Relations Court. Tr. at 25. Appellant's daughter is in the temporary custody of the agency. Tr. at 26. Loucks nonetheless opined that reunification would require at least "three to four months," assuming appellant continued doing the things she had been doing. Tr. at 27.

{¶28} We cannot deny that appellant did reach a number of her case plan objectives; however, appellant's accomplishments generally had only recently begun prior to the hearing of September 11, 2012. Furthermore, as noted previously, the guardian ad litem issued a report before the hearing recommending legal custody to Ms. Brunton. Upon review of the record and the testimony and reports therein, we reach the conclusion that the trial court's grant of legal custody of W.A. to Ms. Brunton was supported by the evidence presented, was made in the consideration of the child's best interests, and did not constitute error or an abuse of discretion.

{¶29} Accordingly, appellant's Second Assignment of Error is overruled.

III.

{¶30} In his Third Assignment of Error, appellant maintains she was deprived of the effective assistance of trial counsel.

{¶31} This Court has recognized "ineffective assistance" claims in permanent custody appeals. *See, e.g., In re Utt Children,* Stark App.No. 2003CA00196, 2003-

Ohio-4576. However, we have not expanded the doctrine of ineffective assistance of counsel beyond criminal cases and those involving permanent custody. *See In re Logwood,* Guernsey App.No. 2004-CA-38, 2005-Ohio-3639, ¶ 26.

**{¶32}** The present case did not result in an order of permanent custody to MCCS as defined under R.C. 2151.011(B)(32). We therefore will not further address appellant's Third Assignment of Error.

**{¶33}** For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Juvenile Division, Muskingum County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.

_____
HON. JOHN W. WISE

_____
HON. W. SCOTT GWIN

_____
HON. CRAIG R. BALDWIN

JWW/d 0715

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:                    :              JUDGMENT ENTRY
                                     :
                                     :
        W.A., JR.                    :              Case No. CT2013-0002


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Muskingum County, Ohio, is affirmed.

Costs assessed to appellant.


_____
HON. JOHN W. WISE


_____
HON W. SCOTT GWIN


_____
HON. CRAIG R. BALDWIN