**[Cite as *In re C.S.*, 2022-Ohio-2451.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

IN RE:

      **C.S, JR.,**

**A DEPENDENT CHILD.**

**[C.S. - APPELLANT]**

**CASE NO. 11-21-07**

**O P I N I O N**

Appeal from Paulding County Common Pleas Court
Juvenile Division
Trial Court No. 20213001

**Judgment Affirmed**

**Date of Decision:  July 18, 2022**

**APPEARANCES:**

    *Howard A. Elliott* **for Appellant**

    *Matthew A. Miller* **for Appellee**

Case No. 11-21-07

**ZIMMERMAN, P.J.**

{¶1} This is an appeal from the October 26, 2021 judgment of the Paulding County Court of Common Pleas, Juvenile Division, granting the Defiance/Paulding Consolidated Job and Family Services' ("the agency") motion for legal custody of C.S. to maternal grandmother, Beth B. ("Beth") and denying Charles S. ("Charles") motion for legal custody of C.S. to paternal grandmother, Janet S. ("Janet"). For the reasons that follow, we affirm.

{¶2} C.S., was born in 2011, to Rachel H. ("Rachel") and Charles (collectively "parents"). Rachel and Charles were never married to each other. On January 25, 2021, the filed a complaint alleging C.S. to be a dependent child under R.C. 2151.04(B) and (C).

{¶3} After a shelter-care hearing on January 26, 2021, the trial court found that probable cause existed to believe that C.S. was a dependent child; that it was in the child's best interest to be placed in the temporary custody of Beth subject to an order of protective supervision to the agency, and that "[t]he [a]gency made *reasonable efforts* to prevent the removal of child [] from the home." (Emphasis added.) (Doc. No. 3).

{¶4} The trial court appointed C.S. a CASA (court appointed special advocate) and a Guardian Ad Litem ("GAL") on February 17, 2021.

{¶5} At the adjudicatory hearing on March 17, 2021, the parents entered admissions to Counts I and II of the complaint, and the trial court found C.S. to be a dependent child under R.C. 2151.04(B) and (C). Thereafter, the CASA and GAL filed reports in the trial court recommending that C.S. remain in the temporary custody of Beth subject to an order of protective supervision to the agency.

{¶6} At the dispositional hearing on April 15, 2021, the trial court ordered that C.S. remain in the temporary custody of Beth subject to protective supervision to the agency pending a review hearing scheduled for June 24, 2021. (Doc. No. 49).

{¶7} At the review hearing, the trial court found that it was in the best interest of C.S. to remain in the temporary custody of Beth subject to an order of protective supervision. The trial court further found that the agency had made *reasonable efforts* to eliminate the continued removal of C.S. from his Rachel's home and to make it possible for C.S. to return home safely. The trial court also scheduled a review hearing for August 26, 2021.

{¶8} However, on August 5, 2021 and before the review hearing, the agency filed a motion requesting that legal custody be granted to Beth.[1] (Doc. No. 58). On August 23, 2021, Charles filed a motion requesting legal custody of C.S. to Janet

---

[1] Rachel's unsupervised visitations were suspended after she tested positive on July 21, 2021 for methamphetamines and amphetamines. Charles, who had been resistant to working with the agency towards case-plan goals and objectives throughout the life of the case, was now serving a 60-day jail sentence in the Paulding County Jail for a probation violation.

and a motion for an interstate compact for the placement of children home study to be completed for Janet because she was a resident of Indiana.

{¶9} At the August review hearing, the trial court found that it was in the best interest of C.S. to remain in the temporary custody of Beth subject to the agency's protective supervision. The trial court further found that the agency had made *reasonable efforts* to eliminate the continued removal of C.S. from his home and to return him home safely. The trial court then scheduled a legal-custody hearing for October 22, 2021 on the parties' legal-custody motions and ordered that Charles's motion for an interstate-home study be held in abeyance.

{¶10} The GAL (on October 13, 2021) and the CASA (on October 14, 2021) filed reports in the juvenile court both recommending that the trial court grant legal custody of C.S. to Beth and that agency services be terminated.

{¶11} After a legal-custody hearing convened on October 22, 2021 and upon agreement of the parties, an executed statement of understanding for legal custody (signed by Beth) was filed in the instant case pursuant to R.C. 2151.353(A)(3)(a)-(d), and the trial court granted legal custody of C.S. to Beth (pursuant to that agreement) by judgment entry filed on October 26, 2021.

{¶12} Charles filed timely notice of appeal and raises two issues for our review, which we will review together.

**Assignment of Error No.  I**

**Where a motion is pending before the court for disposition in a child abuse, neglect or dependency case and that motion seeks to designate an out of state relative as custodian, the trial court abuse [sic] its discretion by holding in abeyance, a motion for an ICPC home study in advance to [sic] the hearing on the custody motion.**

**Assignment of Error No.  II**

**The trial court, in establishing a custody order to a non-parent as a disposition in an abuse, neglect or dependency case, must receive a signed and written statement of understanding for legal custody prior to the commencement of the hearing and thereafter, pursuant to Ohio Revised Code Section 2151.353(A) (3), and thereafter inquire of and seek acknowledgment and understanding from the proposed custodian of their obligations and rights.**

{¶13} In his first assignment of error, Charles challenges the trial court's denial of his motion for legal custody to Janet and subsequent denial of his pending motions.  Specifically, he argues that by holding his request for an interstate home study in abeyance pending the trial court's determination of the motions for legal custody filed by the agency (for Beth) and Charles (for Janet), that the trial court prevented him from supporting his legal-custody motion with evidence.

{¶14} In his second assignment of error, Charles argues that the trial court erred by granting the agency's motion for legal custody to Beth.  Particularly, he asserts that the trial court erred by allowing Beth to sign a statement of understanding for legal custody *during* the dispositional hearing, rather than, *affirm*

an existing statement of understanding for legal custody having been previously signed and attached to the agency's legal-custody motion at the time it was filed.

*Standard of Review*

**{¶15}** On appeal, we review the grant or denial of a motion for legal custody under an abuse-of-discretion standard. *In re B.P.*, 3d Dist. Logan Nos. 8-15-07 and 8-15-08, 2015-Ohio-5445, ¶ 21. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Legal Custody*

**{¶16}** A juvenile court has exclusive original jurisdiction concerning a child alleged to be abused, neglected, or dependent. *In re S.L.*, 3d Dist. Union No. 14-15-07, 2016-Ohio-5000, ¶ 12. *See also In re J.L.M.*, 9th Dist. Summit No. 28867, 2018-Ohio-2175, ¶ 10, citing *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court, Prob. Div.*, 150 Ohio St.3d 230, 2016-Ohio-7382, ¶ 21; R.C. 2151.353(A). Following an adjudication of an abused, neglected, or dependent child, R.C. 2151.353(A) provides the juvenile court's with certain dispositional alternatives for the child. "A juvenile court has broad discretion in [fashioning] the disposition of an abused, neglected, or dependent child." *In re C.W.*, 3d Dist. Wyandot No. 16-09-26, 2010-Ohio-2157, ¶ 10, citing R.C. 2151.353(A) and Juv.R.

29(D). *See also In re L.P.*, 3d Dist. Seneca Nos. 13-12-60 and 13-12-61, 2013-Ohio-2607, ¶ 20; Juv.R. 34(D).

{¶17} Among the juvenile court's dispositional alternatives is granting legal custody of the child to a person identified in the complaint or in a motion filed prior to the dispositional hearing. *See* R.C. 2151.353(A)(3); *See also* Juv.R. 34(D). R.C. 2151.353(A)(3) provides that an

> [a]ward legal custody of the child to * * * any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:
>
> (a)   That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;
>
> (b)   That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.

(c)   That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

(d)   That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

R.C. 2151.353(A)(3)(a)-(d).

**{¶18}** The Revised Code defines "legal custody" to mean

a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court.

R.C. 2151.011(A)(21) (Apr. 6, 2021 to Sept. 29, 2021) (current version R.C. 2151.011(A)(21) (Sept. 30, 2021)).  "[T]he award of legal custody is 'not as drastic a remedy as permanent custody.'"  *In re J.B.*, 3d Dist. Allen No. 1-15-79, 2016-Ohio-2670, ¶ 32, quoting *In re L.D.*, 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214, ¶ 7.  Unlike granting permanent custody, the award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities.  *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17.  Significantly, the parent can

generally petition the court for a custody modification in the future. *In re L.D.* at ¶ 7. Thus, "a parent's right to regain custody is not permanently foreclosed." *In re B.P.*, 2015-Ohio-5445, at ¶ 19, citing *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 12. The Supreme Court of Ohio has held that a finding of parental unfitness is not a prerequisite to a disposition of legal custody where a juvenile court is making a custody determination between a nonparent and parent under R.C. 2151.353. *In re C.R.* at ¶ 21. *See also In re M.H.*, 3d Dist. Seneca Nos. 13-13-45 and 13-3-46, 2014-Ohio-1485, ¶ 15 ("[A] trial court is not required to make a separate 'unsuitability' finding at disposition, because an adjudicatory finding that a child is abused, neglected or dependent implicitly contains an unsuitability finding."), citing *In re C.R.* at paragraphs two and three of the syllabus, and *In re Cunningham*, 59 Ohio St. 2d 100, 102 (1979).

**{¶19}** The standard a juvenile court uses in making its determination in a legal-custody proceeding (by "preponderance of the evidence") is the less restrictive than a permanent-custody proceeding (by "clear and convincing evidence"). *See In re B.P.* at ¶ 19. "'Preponderance of the evidence' means evidence that is more probable, more persuasive, or of greater probative value." *In re M.G.*, 3d Dist. Allen No. 1-18-54, 2019-Ohio-906, ¶ 7, quoting *In re J.B.*, 3d Dist. Allen No. 1-15-79, 2016-Ohio-2670, ¶ 33, citing *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012–Ohio–5514, ¶ 7.

{¶20} At a dispositional hearing involving a request for legal custody, the focus is on the best interest of the child. *In re P.S.*, 5th Dist. Stark No. 2012CA00007, 2012-Ohio-3431, ¶ 31, citing *In re C.R.* at ¶ 10; *In re B.P.* at ¶ 19. R.C. 2151.353(A)(3) does not list specific factors a court should consider in deciding what is in the child's best interest pursuant to the requested disposition of legal custody. *In re B.P.* at ¶ 20, citing *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶21} Although, no specific factors must be followed in a case involving the dispositional alternative of legal custody, we have previously concluded that juvenile courts may be guided by the factors listed in R.C. 2151.414(D)(1) (the permanent-custody factors) or R.C. 3109.04(F)(1) (factors employed in private-custody disputes) since they are both purely instructive. *See In re L.P.*, 3d Dist. Seneca Nos. 13-12-60 and 13-12-61, 2013-Ohio-2607, ¶ 22. *See also In re K.B.*, 3d Dist. Hancock Nos. 5-20-37 and 5-20-38, 2021-Ohio-3273, ¶ 50.

{¶22} In addition to the foregoing factors, the juvenile court must also liberally interpret and construe R.C. Chapter 2151 so as to effectuate the General Assembly's express purpose when considering which situation will best promote the child's "care, protection, and mental and physical development," understanding that the child should only be separated from his or her parents "when necessary for

the child's welfare or in the interests of public safety." *In re C.W.* at ¶ 11, citing R.C. 2151.01(A). *See also In re L.P.* at ¶ 21.

*Analysis*

**{¶23}** The record reveals that Rachel and Charles entered admissions to both counts of dependency involving C.S. as set forth in the agency's complaint. Based upon the admission, the trial court adjudicated C.S., a dependent child. At disposition, the trial court placed C.S. into the temporary custody of Beth under the protective supervision of the agency. Thereafter, the trial court engaged in two review hearings wherein the trial court ordered the continuation of its temporary-custody order.

**{¶24}** Ultimately, the agency filed a motion for legal custody to Beth. In response, Charles filed a motion for legal custody (to Janet) that included two prayers of relief. First, he requested that the trial court allow an interstate-home study to be completed for Janet's home in Indiana. Secondly, he requested that upon approval of the home study, the trial court grant Janet legal custody of C.S. At the review hearing, the trial court held his interstate-home study motion in abeyance pending its determination regarding legal custody.

**{¶25}** Importantly, the parties appeared for the legal-custody hearing having reached an agreement as to the agency's request for legal custody. The parties recited their agreement to the trial court (in open court) agreeing that legal custody

to Beth was in the best interest of C.S. Thereafter, Charles withdrew his motion for legal custody. (Oct. 22, 2021 Tr. at 206). At the hearing, Beth acknowledged her willingness to become C.S.'s legal custodian and that she understood what that status meant. *See In re R.D.J., I.E.J., W.A.J., S.J.J., and A.J.*, 5th Dist. Delaware No. 12 CAF 07 0046, 2013-Ohio-1999, ¶ 27. *See also In the Matter of A.B., et al.*, 12th Dist. Brown No. CA 2016-11-021, 2017-Ohio-5776, ¶ 27 ("'the legislative purpose of the signed statement of understanding under R.C. 2151.353(A) is to help insure that prospective legal custodians are apprised of the significant responsibilities they will undertake.'") quoting *In re W.A.*, 5th Dist. Muskingum No. CT2013-0002, 2013-Ohio-3444, ¶ 16.

**{¶26}** Beth executed an *unopposed* statement of understanding for legal custody in open court at the legal-custody hearing. Neither Charles nor Rachel challenged the agency's request for Beth to be granted legal custody of C.S. Nevertheless, Charles now appeals the trial court's process of complying with R.C. 2151.353(A)(3)(a)-(d) regarding Beth's filing of a statement of understanding for legal custody, despite the fact that neither he nor Janet filed one in his motion for legal custody.

**{¶27}** Here, Charles is estopped from seeking to benefit from a purported error that he invited. *See Koch v. Rist*, 89 Ohio St.3d 250, 256 (2000) (Cook, J., dissenting) ("Invited error is a branch of the waiver doctrine that estops a party from

seeking to profit from an error that the party invited or induced.") "Under the doctrine of invited error, an appellant, in either a civil or a criminal case, cannot attack a judgment for errors committed by himself or herself, for errors that the appellant induced the court to commit, or for errors which the appellant is actively responsible." *In re J.B.*, 10th Dist. No. 11AP-63, 2011-Ohio-3658, 2011 WL 3077311, ¶ 10. Importantly, Charles "cannot complain of any action taken or ruling made by the [trial] court in accordance with [his] own [] request." *Id.*

{¶28} Significantly, the parties asked the trial court to approve and adopt their agreement granting legal custody to Beth as in the best interest of C.S. In doing so, Charles withdrew his legal-custody request and did not challenge Beth's qualification as the legal custodian of C.S. Following the trial court's approval and adoption of that agreement, the trial court ended the agency's order of protective supervision involving C.S. and terminated further agency involvement. Thus, we conclude that Charles's request for an interstate-home study was implicitly withdrawn, and consequently denied. The abeyance was inconsequential at that point.

{¶29} For these reasons, we will not conclude that the trial court committed any err by granting the agency's motion for legal custody to Beth under the circumstances of this appeal. Error, if any, was invited by Charles.

**{¶30}** Accordingly, Charles's first and second assignments of error are overruled.

**{¶31}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**