DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, G.S. and D.S. (collectively "Fathers"), appeal from the judgment of the Summit County Court of Common Pleas, Juvenile Division, which awarded temporary custody of B.C. and S.S. to Appellee, Summit County Children Services Board ("CSB"). This Court affirms.
 {¶ 2} On May 10, 2005, CSB filed a complaint alleging that B.C. and S.S. were dependent and neglected children. At the time of the complaint, the children lived with J.C. ("Mother"), their custodial parent. At the initial shelter care hearing, the magistrate determined that probable cause existed to remove the children from the home and the children remained in the emergency temporary custody of CSB. Following a trial on the complaints, both children were found to be dependent.
 {¶ 3} On July 13, 2005, the children were placed in the homes of their respective fathers. A dispositional hearing was held and on September 7, 2005, the magistrate found that it was in the children's best interest to remain in the temporary custody of CSB. In that same order, the children were ordered to remain in the placement of their respective fathers. Fathers objected to the magistrate's decision, urging that the trial court was required to award them custody absent a showing that they were unfit. The trial court overruled Fathers' objections on December 14, 2005. Fathers timely appealed, raising one assignment of error for review.
 ASSIGNMENT OF ERROR
"The court erred to the detriment of the fathers when it failed to place the children in their custody at the dispositional hearing thus depriving the fathers of the fundamental liberty interest of rearing their children without providing them procedural due process protection and, thereby, depriving them of equal protection under the law in violation of the Ohio and United States Constitutions."
 {¶ 4} In their sole assignment, Fathers assert that their fundamental rights in raising their children were violated by the trial court. Specifically, Fathers assert that the trial court was required to find them to be unfit parents before awarding temporary custody to CSB. We disagree.
 {¶ 5} Subsequent to the filing of the briefs herein, the Ohio Supreme Court has rejected Fathers' argument that the trial court was required to find them unfit before awarding temporary custody to CSB. See In re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191. InIn Re. C.R., the Court held as follows:
"A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents. It does not, however, permanently foreclose the right of either parent to regain custody, because it is not a termination of all residual parental rights, privileges, and responsibilities, and therefore a motion for a change of custody could be filed in a proper case in accordance with law. See R.C. 2151.42.
"For these reasons, we conclude, as the majority of appellate districts which have considered the issue have concluded, that when a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." Id. at ¶ 23-24.
Accordingly, from a procedural aspect, Fathers' claims must fail.
 {¶ 6} Fathers further assert that the statutory framework adopted by the General Assembly violates their rights to procedural due process. This Court disagrees.
 {¶ 7} "The essence of due process is the requirement that `a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" Mathews v. Eldridge
(1976), 424 U.S. 319, 348, 47 L.Ed.2d 18, quoting JointAnti-Fascist Refugee Comm. v. McGrath (1951), 341 U.S. 123,1711-72, 95 L.Ed. 817 (Frankfurter, J., concurring). Herein, there is no question that Fathers were given notice and an opportunity to be heard. The record reveals that Fathers were able to participate in every stage of the proceedings. They received notice prior to the probable cause hearing and have argued at every stage for custody of their children.
 {¶ 8} In addition, there is no indication in the record nor any allegation that Fathers (if applicable) were not previously given notice and an opportunity to be heard when Mother was named the residential parent for the children. In an effort to avoid application of this general rule, however, Fathers assert that they have never been given the opportunity to litigate whether they are unfit. Specifically, Fathers urge that until the dispositional hearing, they were merely bystanders, with little ability to affect the proceedings. As the Court in In re C.R.
noted, however, Fathers' arguments regarding custody have not been foreclosed. In re C.R. at ¶ 23. The trial court has not awarded permanent custody of the children to CSB. Fathers, therefore, may continue to present arguments in future proceedings that it is in the children's best interests that Fathers gain custody. Consistent with the rationale contained inIn re C.R., we cannot find that Ohio's statutory scheme as it pertains to temporary custody proceedings serves to violate the procedural due process rights of noncustodial parents.
 {¶ 9} Fathers also assert that Ohio's statutory scheme deprives them of substantive due process. For the reasons that follow, this Court disagrees.
 {¶ 10} The Due Process Clause of the Fourteenth Amendment contains a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v.Glucksberg (1997), 521 U.S. 702, 720, 138 L.Ed.2d 772. Substantive due process prohibits the government from infringing upon fundamental liberty interests in any manner, regardless of the procedure provided, unless the infringement survives strict scrutiny; i.e., the government's infringement must be "narrowly tailored to serve a compelling state interest." Reno v. Flores
(1993), 507 U.S. 292, 302, 123 L.Ed.2d 1.
 {¶ 11} In their argument, Fathers assert that they have a fundamental right in raising their children. We agree as it is well established that a parent's right to raise a child is an essential and basic civil right. In re Hayes (1997),79 Ohio St.3d 46, 48. However, it is also well established that a parent may permanently lose custody of a child upon a finding of unsuitability. In re Perales (1977), 52 Ohio St.2d 89, syllabus. Fathers have urged that this standard must also apply to temporary custody proceedings. We find no merit in such an argument.
 {¶ 12} Unquestionably, the State has a compelling interest in removing abused, neglected, and dependent children from their homes. Pater v. Pater (1992), 63 Ohio St.3d 393, 398. See, also, Oliver v. Feldner, 149 Ohio App.3d 114, 2002-Ohio-3209, at ¶ 60. Accordingly, this Court must examine whether the procedure employed by the State in determining the temporary custody of those children is narrowly tailored to serve that interest.
 {¶ 13} Initially, we note, as the Ohio Supreme Court noted inIn re C.R., temporary custody proceedings are inherently and significantly different from proceedings which permanently terminate parental rights. In re C.R. at ¶ 13-17. An award of temporary custody is subject "to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(19). Whereas, an award of permanent custody "divests the natural parents * * * of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.011(B)(30). Accordingly, the infringement upon Fathers' rights is lesser than that presented in a permanent custody matter.
 {¶ 14} As Fathers are not permanently divested of the right to raise their children, we decline to apply the legislature's standard for such a procedure to an award of temporary custody. To accept Fathers' argument would altogether ignore the important distinctions between permanent custody and temporary custody. While the best interest standard may be a lower threshold than a finding of unsuitability, Fathers' rights to raise their children are infringed upon to a lesser degree as they have retained their residual parental rights. R.C. 2511.011(B)(19). This Court, therefore, finds that the procedures outlined by the State are narrowly tailored to meet its compelling interest. Children alleged to be abused, neglected or dependent require immediate placement in a safe, stable environment. Further, the Ohio Supreme Court held that a finding that the child is abused, neglected, or dependent "implicitly involves a determination of the unsuitability of child's custodial and/or noncustodial parents."[1] In re C.R. at ¶ 23. The State's procedure, therefore, which permits an award of temporary custody to CSB upon a finding that such an award is in the best interests of the child is narrowly tailored to serve the State's compelling interest in protecting children from abuse, neglect, and dependency.
 {¶ 15} Finally, Fathers assert that Ohio's statutory scheme violates the equal protection clauses of the Ohio and United States Constitutions. The Equal Protection Clause of theFourteenth Amendment to the United States Constitution states that no state shall deny to any person the equal protection of the laws. It prevents a state from treating people differently under its laws on an arbitrary basis. Harper v. Virginia StateBd. of Elections (1966), 383 U.S. 663, 681, 16 L.Ed.2d 169
(Harlan, J., dissenting). An equal protection claim arises, therefore, only in the context of an unconstitutional classification made by a state, i.e., when similarly situated individuals are treated differently. Conley v. Shearer (1992),64 Ohio St.3d 284, 288-289. Accordingly, a law that operates identically on all people under like circumstances will not give rise to an equal protection violation. Id. at 289.
 {¶ 16} Herein, Fathers have not identified any similarly situated individuals who have been treated differently. Rather, they assert that they are treated differently than Mother. However, as noted above, Mother was the residential parent for both children while Fathers were the noncustodial parents of the respective children. As Mother and Fathers are not similarly situated, Fathers claims of equal protection violations must fail. Fathers' assignment of error, therefore, is overruled.
 {¶ 17} Fathers' sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Carr, J. Whitmore, J. concur.
[1] Given these facts, we recognize the seemingly harsh result reached under In re C.R. We are compelled to find that two compassionate, loving fathers are implicitly unfit to parent their own children. Our result, however, is mandated by the current statutory scheme and Ohio Supreme Court precedent. Revising that scheme to account for facts analogous to those herein would likely lead to a more equitable result, but such is a task for the legislature.