[Cite as *Talarek v. Colton*, 2018-Ohio-3611.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

DANIEL J. TALAREK, LORAIN
COUNTY TREASURER, et al.

    Appellee

    v.

KEITH COLTON, et al.

    Appellant

C.A. No.     18CA011246


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    16TX006732

DECISION AND JOURNAL ENTRY

Dated: September 10, 2018

---

CARR, Judge.

{¶1}    Appellant Keith Colton appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2}    Mr. Colton owned real property in Elyria known as permanent parcel number 06-26-008-103-003 ("the Property"). In 2007, Mr. Colton took out a mortgage from Sky Bank on the Property to make repairs to it. In 2010, Huntington National Bank ("Huntington") initiated a foreclosure action against Mr. Colton regarding the Property, but subsequently dismissed it. At that time, Huntington also hired a company to winterize the Property and put a lockbox on the house.

{¶3}    The house on the Property was condemned in August 2012 and was demolished in June 2013. In July 2016, Daniel Talarek, as the Lorain County Treasurer ("the Treasurer"), and the Lorain County Land Reutilization Corporation ("LCLRC") filed a complaint for

foreclosure, collection of delinquent taxes and assessments, and collection of costs of demolition. The complaint named Mr. Colton, Mr. Colton's unknown spouse, and Sky Bank as Defendants. Ultimately, the Treasurer and LCLRC moved to amend the complaint to correct an error in the address of the Property. That motion was granted. Mr. Colton filed counterclaims against the Treasurer and LCLRC, a third party complaint against the City of Elyria ("Elyria"), and a cross-claim against Huntington, which was improperly named as Sky Bank. Those claims included a claim against Elyria pursuant to 42 U.S.C. 1983, alleging, inter alia, that Elyria violated Mr. Colton's due process rights in failing to notify him prior to the demolition of the Property.

{¶4} The Treasurer and LCLRC filed a motion to dismiss Mr. Colton's counterclaims and Elyria filed a motion to dismiss the third party complaint. The trial court granted the Treasurer's and LCLRC's motion and granted Elyria's motion in part. Nonetheless, the 42 U.S.C. 1983 claim remained pending against Elyria.

{¶5} Thereafter, Huntington, the Treasurer and LCLRC, and Elyria separately moved for summary judgment. Following briefing, the trial court found that the Treasurer, LCLRC, Elyria, and Huntington were entitled to summary judgment. The trial court concluded $29,017.03 was due the Treasurer, that, following the alternative redemption period, the Property would be transferred to LCLRC, and that LCLRC was entitled to recover $12,705.42 from Mr. Colton to cover the costs of demolition of the Property.

{¶6} Mr. Colton has appealed, raising two assignments of error for our review, which we will address out of sequence to facilitate our analysis.

II.

**ASSIGNMENT OF ERROR II**

THE AFFIDAVIT OF KEVIN BRUBAKER WAS DEFICIENT, WAS NOT MADE UPON PERSONAL KNOWLEDGE, AND FAILED TO AUTHENTICATE NECESSARY DOCUMENTS[.]

{¶7}  Mr. Colton argues in his second assignment of error that Kevin Brubaker's affidavit was deficient, was not made upon personal knowledge, and failed to authenticate necessary documents.  In his argument he also points to a paragraph as being hearsay and argues that there were no exhibits verifying that the condemnation and demolition were properly conducted or demonstrating that LCLRC had an agency relationship with Elyria.

{¶8}  In support of its motion for summary judgment, Elyria offered the affidavit of Mr. Brubaker, who described himself as the former Senior Manager of the Elyria Building Department and the then Assistant Safety Service Director.  The affidavit did not state that it was based upon personal knowledge or incorporate or authenticate the documents that accompanied the affidavit.  In Mr. Colton's motion in opposition to the motion for summary judgment, Mr. Colton pointed out these issues and additionally asserted that one of the paragraphs contained hearsay, that there were no exhibits verifying that the condemnation and demolition were properly conducted, and there was no exhibit establishing that LCLRC had an agency relationship with Elyria.  Thereafter, Elyria moved to file a supplemental affidavit and the motion was granted.  The supplemental affidavit from Mr. Brubaker indicated that the statements in his first affidavit were based on personal knowledge as he was personally involved in making visits to the Property and reviewing notices that were sent.  The supplemental affidavit also included an averment that the exhibits attached to Elyria's motion for summary judgment were true and accurate copies of documents contained in Elyria's building department file for the

Property. Mr. Colton did not move to strike the supplemental affidavit or argue that the supplemental affidavit failed to correct the deficiencies in the original affidavit.

{¶9} This Court has noted "[u]nauthenticated documents and affidavits not based on personal knowledge have no evidentiary value and should not be considered by the court in deciding whether summary judgment is appropriate." (Internal quotations and citation omitted.) *Centro Midway LLC v. Xanadu Group, Inc.*, 9th Dist. Lorain No. 10CA009857, 2011-Ohio-3338, ¶ 7. "Nonetheless, this Court has held that unless the opposing party objects to the admissibility of improper evidence, the trial court may, but need not consider the evidence." (Internal quotations and citations omitted.) *Id.*

{¶10} Here, while Mr. Colton did object to the initial affidavit, Elyria was granted permission to file a supplemental affidavit to address the issues raised by Mr. Colton. Mr. Colton did not move to strike the supplemental affidavit or argue below that the supplemental affidavit failed to correct the deficiencies in the original affidavit. *See Carnegie Cos. v. Summit Properties*, 9th Dist. Summit No. 25622, 2012-Ohio-1324, ¶ 8 ("[A]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.") (Internal quotations and citations omitted.) Moreover, on appeal, Mr. Colton has not explained how the supplemental affidavit failed to demonstrate Mr. Brubaker's personal knowledge or the authenticity of the documents attached to the motion for summary judgment. *See* App.R. 16(A)(7). To the extent that Mr. Colton complains about hearsay in one paragraph of the original affidavit, there is nothing to suggest that the trial court considered that paragraph in rendering judgment; Mr. Colton has not explained how consideration of that paragraph was necessary to the trial court's judgment. *See* App.R.

16(A)(7). Finally, to the extent Mr. Colton challenges Elyria's failure to include exhibits to demonstrate certain facts, Mr. Colton has not explained why the same should require the affidavit to not be considered. *See* App.R. 16(A)(7). Instead, it appears that Mr. Colton is arguing that the absence of evidentiary materials demonstrating those facts precludes summary judgment; however, that argument would relate to the merits of the summary judgment motion, not the propriety of considering the affidavit.

{¶11} Given the foregoing, Mr. Colton's second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT GRANTED ELYRIA'S MOTION FOR SUMMARY JUDGMENT WHEN MATERIAL ISSUES OF FACT REMAINED FOR TRIAL REGARDING WHETHER KEITH COLTON WAS GIVEN PROPER AND REASONABLE NOTICE OF CONDEMNATION AND THE DEMOLITION[.]

{¶12} Mr. Colton argues in his first assignment of error that the trial court erred in granting Elyria's motion for summary judgment because genuine issues of material fact remained with respect to whether Mr. Colton was given proper or reasonable notice prior to the condemnation and demolition. In his argument, while mentioning both condemnation and demolition, Mr. Colton focuses on whether the notice was sufficient prior to demolition. Accordingly, our analysis will also be focused on that issue[1].

---

[1] We note that, both below and on appeal, Elyria failed to challenge whether Mr. Colton's claim could properly proceed as an action pursuant to 42 U.S.C. 1983. For example, "[a] Section 1983 claim may be brought against a municipality[,] [b]ut a municipality cannot be held liable solely on a theory of respondeat superior. A court may only impose liability if the municipality implemented a particular official policy that caused the injury suffered." *Cincinnati v. York Masons Bldg. Assn.*, 1st Dist. Hamilton Nos. C-080003, C-080019, 2008-Ohio-4271, ¶ 31, citing *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 691, 694 (1978). Because this issue was not raised below, this Court has addressed the merits of the arguments. We take no position on whether the 1983 claim was properly instituted.

{¶13} To the extent that Mr. Colton raises substantive due process arguments within this assignment of error, they will be disregarded as being outside the scope of his stated assignment of error; his stated assignment of error addresses only procedural due process, i.e. the right to notice and an opportunity to be heard. *See Hall v. Silver*, 9th Dist. Summit No. 28798, 2018-Ohio-1706, ¶ 13; *In re B.C.*, 9th Dist. Summit No. 23044, 2006-Ohio-3286, ¶ 6-10 (discussing procedural and substantive due process). Thus, our analysis will be limited to discussing procedural due process.

{¶14} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶15} Pursuant to Civ.R. 56(C), summary judgment is proper if:

> No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶16} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id*. Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C),

Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Id*. at 293. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶17} 42 U.S.C. 1983 "provides a remedy to persons whose federal rights have been violated by governmental officials." *1946 St. Clair Corp. v. Cleveland,* 49 Ohio St.3d 33, 34 (1990). "To establish such a claim, two elements are required: (1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*

{¶18} "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the [S]tate seeks to infringe a protected liberty or property interest." *Sherrard v. Oberlin*, 9th Dist. Lorain No. 10CA009817, 2011-Ohio-2325, ¶ 16, quoting *State v. Hochhausler,* 76 Ohio St.3d 455, 459 (1996). However, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). "Rather, * * * due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Internal quotations and citation omitted.) *Id.* "[W]hen notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it, and that assessing the adequacy of a particular form of notice requires balancing

the interest of the State against the individual interest sought to be protected by the Fourteenth Amendment[.]" (Internal quotations and citations omitted.) *Id.* at 229.

{¶19} In the context of a tax sale of a property, the United States Supreme Court has held that, when certified mail is returned unclaimed, "the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225. In so holding, the Court concluded that the fact that the property owner had a legal obligation to keep his address updated did not relieve the State of its constitutional obligation to provide adequate notice. *Id.* at 231-232. The Court noted that reasonable steps, depending on the circumstances, could have included sending the notice by regular mail, posting the notice on the front door, or addressing otherwise undeliverable mail to "occupant." *Id.* at 236. The Supreme Court reiterated that "notice by publication is adequate only where it is not reasonably possible or practicable to give more adequate warning[.]" *Id.* at 237; *see also PHH Mtge. Corp v. Prater*, 133 Ohio St.3d 91, 2012-Ohio-3931, ¶ 12 ("[N]otice by publication to a person with a property interest in a proceeding is insufficient when that person's address is known or easily ascertainable.").

{¶20} In support of its motion for summary judgment, Elyria submitted an affidavit and supplemental affidavit of Mr. Brubaker, the former Senior Manager of the Elyria Building Department. In his initial affidavit, Mr. Brubaker indicated that he made several visits to the Property during 2012 and 2013 and was familiar with the condition of the Property. He stated that, in August 2012, the building on the Property was condemned pursuant to the International Property Maintenance Code Section 108.1.3, which was codified in Chapter 1305 of the Elyria Codified Ordinances. The affidavit indicated that notice of the condemnation was sent by certified mail to Mr. Colton at an address on Elm Street in Cleveland, that the address was taken

directly from the records of the county auditor, which listed the Elm Street address as the tax mailing address, and that the condemnation notice was returned marked "unable to forward." The exhibits accompanying the motion include a copy of a certified mail envelope which indicates that it was received by the Elyria Building Department on September 17, 2012 and contains a notation that states "unable to forward[.]" Mr. Brubaker additionally averred that a copy of the condemnation notice was posted at the Property. An accompanying photograph depicts the notice affixed to a structure next to a mail box with an address matching that of the Property. Other exhibits attached to the motion describe the condition of the structure prior to demolition and note that a chimney had collapsed and a section of the foundation had deteriorated. Those exhibits also described the house as appearing to be abandoned and vacant.

{¶21} Mr. Brubaker further indicated that on February 26, 2013, he prepared, signed, and mailed a notice entitled "Repair or Demolition of [the Property]." He further indicated that that notice was sent to Mr. Colton at the Elm Street address and his address in Sheffield Lake. Mr. Brubaker asserted that the notice was also sent to Sky Bank. None of the notices were returned to sender. The February 26, 2013 notice was also posted at the Property. Finally, Mr. Brubaker averred that the structure on the Property was demolished on or about June 11, 2013.

{¶22} The exhibits included a copy of a letter addressed to Mr. Colton at the Elm Street address entitled "Repair or Demolition of [the Property]." The letter stated that the "City of Elyria Building Department, Elyria Health Department and the Elyria Fire Department recently did an exterior and interior inspection regarding the [Property]." The letter went on to state that the Property was unsafe because it was "structurally unsafe or unsound[,]" constituted "a fire hazard[,]" was "dangerous to human life[,]" and was "a hazard to safety or health, by reason of inadequate maintenance, dilapidation, obsolescence or abandonment." The letter required that

the Property be repaired or demolished within 10 days from the date listed on the letter and that Mr. Colton contact the office with information regarding his decision and plan within the 10 day period. If no response was received, Elyria would demolish the structure. The bottom of the letter included a phone a number to call if there were any questions and listed the department's hours of operation. The top corner of the letter contained a copy of a certificate of mailing that reflects that an item was mailed to Mr. Colton at the Elm Street address.

{¶23} Another exhibit is a similar letter addressed to Sky Bank, but the letter reads, "Dear Keith Colton[.]" The certificate of mailing reflects it was addressed to Sky Bank at an address in Salinville. The third letter is addressed to Sky Bank and has a certificate of mailing indicating that it is addressed to Sky Bank at Mr. Colton's Sheffield Lake address.

{¶24} In opposition to the motion for summary judgment, Mr. Colton pointed out that Mr. Brubaker's letter to Mr. Colton at the Sheffield Lake address was not addressed to Mr. Colton and instead was addressed to Sky Bank. Further, Mr. Colton presented his own affidavit wherein he averred that he had lived at an address in Sheffield Lake since 2004. Mr. Colton indicated that he hired someone to remodel the Property and thereafter listed it for rent. He opined that the house did not have structural defects and was in good condition. Mr. Colton further averred that he did not receive any notices about repairs, condemnation, or demolition prior to the demolition of the house. Mr. Colton indicated that he thought Huntington was maintaining the Property.

{¶25} Mr. Colton also presented the affidavit of a man who did work on the house in 2007-2009. That individual averred that the structure was not in a condition such that it should have been condemned, and, at the time, he thought it could have sold for $80,000 to $90,000.

**{¶26}** In reviewing the totality of the evidence in a light most favorable to Mr. Colton, and in light of his arguments on appeal, we conclude that the trial court did not err in concluding that Elyria met its burden of demonstrating it complied with constitutional procedural due process standards. As noted above, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, 547 U.S. at 226. "Rather, * * * due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Internal quotations and citations omitted.) *Id.* Elyria sent the condemnation notice by certified mail to Mr. Colton's tax mailing address, which was returned with a notation that the post office was unable to forward. If Elyria would have stopped there, as in *Jones*, its efforts could be deemed constitutionally insufficient, depending on the additional circumstances. *See id.* at 225. But Elyria did more than just send the condemnation notice by certified mail. It also posted the notice on the Property. In addition, Elyria mailed the demolition and repair notice to Mr. Colton's tax mailing address by regular mail, which was not returned, and also posted that notice at the Property. The Supreme Court of the United States has noted that attempted service by regular mail may be a reasonable additional measure when certified mail is returned unclaimed. *See id.* at 234. The Court stated that, in some cases, certified mail might be less likely to provide actual notice, observing that, with certified mail, "the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time." *Id.* at 235. The Supreme Court has also approved of posting notices as a reasonable follow up approach. *See id.*

**{¶27}** To the extent that Elyria attempted to send notice to Mr. Colton at his Sheffield Lake address, it cannot be said that such attempt was reasonably calculated to provide notice in

light of the fact that the mailing was addressed to Sky Bank. Nonetheless, while Elyria's notifications were far from perfect, and were sometimes sloppy, we cannot say that it failed to meets its *Dresher* burden.

{¶28} Moreover, Mr. Colton's evidence failed to demonstrate the existence of a genuine issue of material fact. As Elyria was not required to demonstrate that Mr. Colton actually received the notices, Mr. Colton's averments that he never received the notices do not detract from the evidence presented by Elyria concerning its attempts at notification. *See Jones,* 547 U.S. at 226.

{¶29} Mr. Colton also argues that, even if he had received the notice, it would be insufficient to notify him of what the issues were with the Property and what repairs Mr. Colton needed to complete. The notice did apprise Mr. Colton that the structure was unsafe and would be demolished if he did not take action in the 10 day time frame, and provided a number for him to call if he had questions. In addition, the letter advised that one of the reasons why the structure was deemed unsafe was that it was "structurally unsafe or unsound[.]" Mr. Colton has not offered any case law demonstrating that such notice was insufficient in content to meet due process standards. *See* App.R. 16(A)(7).

{¶30} Given all of the foregoing, we overrule Mr. Colton's first assignment of error.

III.

{¶31} Mr. Colton's assignments of error are overruled and the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

GRACE M. DOBERDRUK, Attorney at Law, for Appellant.

ERIK A. BREUNIG, Assistant Law Director, for Appellee.