[Cite as *In re M.G.*, 2023-Ohio-1396.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                    |   |                            |
|--------------------|---|----------------------------|
| IN RE: M.G.        | : | APPEAL NO. C-220425        |
|                    |   | TRIAL NO. F21-1455Z        |
|                    | : |                            |
|                    | : |                            |
|                    | : | *O P I N I O N.*           |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed in Part; Appeal is Dismissed in Part

Date of Judgment Entry on Appeal: April 28, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Michelle Browning*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Kimberly V. Thomas,* for Appellant-Mother,

*Raymond T. Faller*, Hamilton County Public Defender, and *Klarysa Benge*, Assistant Public Defender, Attorney for the Guardian Ad Litem for M.G.,

*J. Thomas Hodges*, Attorney for M.G.

**Bock, Judge.**

{¶1} Appellant-mother appeals the Hamilton County Juvenile Court's judgment adjudicating M.G. as a dependent child and the juvenile court's finding that the Hamilton County Department of Job and Family Services ("JFS") made reasonable efforts to avoid the removal of the child from the home.

{¶2} Because we find that whether JFS made reasonable efforts is moot, we dismiss the second assignment of error. But we affirm the remainder of the juvenile court's judgment.

## I. Relevant Facts and Procedural History

JFS investigated allegations of abuse in the home and opened the case

{¶3} JFS received a report that M.G.'s older brother, D.G., had engaged in sexual misconduct with a foster sibling. This allegation was substantiated upon completion of JFS's investigation.

{¶4} In December 2021, the state charged D.G., as an alleged juvenile delinquent, with two counts of rape and two counts of gross sexual imposition with a minor under the age of 12. D.G. was released to his parents' home on electronic monitoring. As a condition of D.G.'s release, the juvenile delinquency magistrate ordered D.G. not to have unsupervised contact with any child under the age of 12.

{¶5} Because the juvenile delinquency magistrate ordered D.G. to have no unsupervised contact with any children under the age of 12, and because M.G. was only 11 years old, the juvenile dependency magistrate granted JFS's request to remove M.G. from his parents' home via an emergency telephone ex parte order and placed him in a foster home.

2

### The parties agreed to grant interim custody of M.G. to JFS

**{¶6}** The next day, JFS filed a complaint alleging that M.G. was a dependent child under R.C. 2151.04(B), a child who lacks adequate parental care due to the physical or mental condition of the parents, or R.C. 2151.04(C), a child whose condition or environment is such that it is in the child's best interest for the state to assume guardianship. The magistrate held a hearing that same day.

**{¶7}** All parties, including M.G.'s parents, agreed with granting interim custody of M.G. to JFS. The magistrate found that, under R.C. 2151.31 and 2151.33, M.G.'s continued residence in the home while D.G. lived there would not be in M.G.'s best interest.

**{¶8}** The magistrate further found that reasonable efforts were made to prevent M.G.'s removal under R.C. 2151.419, though services were impossible because M.G. had been removed on an emergency basis. Neither parent objected to the reasonable-efforts finding.

**{¶9}** In January 2022, the juvenile court granted JFS's request to place M.G. with H.B., a paternal aunt who was a licensed foster parent. The parents agreed with the placement.

### The trial court held adjudicatory hearings

**{¶10}** At the hearings, a JFS employee testified about the reasons that it was in M.G.'s best interest for the court to have supervision over the family.

**{¶11}** Counsel for mother asked the court for "custody [to] be remanded to [mother] with orders of protective supervision."

**{¶12}** At the close of evidence, the magistrate determined that there had been a risk to M.G. because "there is a child in the home who's been charged with sexual

charges that presents children in his presence [sic] [who are under the age of 12] to be at risk." The magistrate determined that M.G. was dependent.

{¶13} All parties agreed to remanding custody of M.G. to his parents with protective orders. The magistrate ordered that, when the brothers slept in the same home, they must be in separate bedrooms with alarms on each bedroom door. Further, M.G. was to continue counseling. The magistrate found that JFS had made reasonable efforts for M.G. to return home.

## Mother objected to dependency adjudication

{¶14} Mother objected to the magistrate's decision. Though she previously had requested protective orders, she argued in her objection that there was no safety issue in returning M.G. to the home to warrant protective orders. Mother further asserted that JFS did not meet its burden to show that it had made reasonable efforts to prevent M.G.'s removal from the home.

## The court overruled mother's objection and adopted the magistrate's decision

{¶15} In early August 2022, the juvenile court overruled mother's objection, finding that M.G. was removed from his parents' home due to concerns for his health and safety, his parents' "lack of parental protective capacity," and the juvenile delinquency magistrate's order prohibiting D.G. from being around any children under the age of 12 without supervision. The juvenile court concluded that JFS had made reasonable efforts to prevent M.G.'s removal from the home. The court adopted and incorporated the magistrate's decision into its entry.

## The magistrate terminated the custody orders

{¶16} In late August 2022, the magistrate found that it was in M.G.'s best interest to terminate the protective orders. All parties agreed. M.G. had turned 12 years

4

old at this point. The magistrate granted JFS's motion to terminate temporary custody and remanded custody of M.G. to the parents with no protective orders. The case was closed.

## II.    Law and Analysis

**{¶17}** Mother appeals, asserting that the juvenile court erred by (1) adjudicating M.G. dependent, and (2) finding that JFS had made reasonable efforts to keep M.G. in the home.

### A.  The juvenile court's dependency adjudication was not error

JFS has a duty to protect children from abuse, dependency and neglect

**{¶18}** Abuse, dependency, and neglect ("A.D.N.") cases are initiated for the purpose of obtaining court intervention to protect a child. Children alleged to be abused, neglected, or dependent require immediate placement in a safe, stable environment. *In re B.C.*, 9th Dist. Summit No. 23044, 2006-Ohio-3286, ¶ 14. The state's procedure, which permits an award of temporary custody to JFS upon a finding that such an award is in the best interest of the child, is narrowly tailored to serve the state's compelling interest in protecting children in A.D.N. matters. *Id.*

**{¶19}** A juvenile court may order certain dispositional alternatives following an adjudication of an abused, dependent, or neglected child. *In re C.S,* 3d Dist. Paulding No. 11-21-07, 2022-Ohio-2451, ¶ 16. "A juvenile court has broad discretion in [fashioning] the disposition of an abused, neglected, or dependent child." *Id.*, quoting *In re C.W.*, 3d Dist. Wyandot No. 16-09-26, 2010-Ohio-2157, ¶ 10; Juv.R. 29(D). Under R.C. 2151.353(A)(1), one of those alternatives includes placing the child in "protective supervision." *See Davis v. Smith*, 9th Dist. Summit No. 16051, 1993 Ohio App. LEXIS 3695, 4-5 (July 21, 1993). Protective supervision is a dispositional order

in which the juvenile court permits a dependent child to remain in the parents' custody "subject to any conditions and limitations upon * * * [the] parents * * * including supervision as directed by the court for the protection of the child." R.C. 2151.011(B)(42).

{¶20} Protective supervision does not affect the finding of dependency or terminate the case. *Davis* at 5. To the contrary, a finding of dependency is necessary before the court can order continuing protective supervision under R.C. 2151.353(A)(1). *Id.*

Any error was invited

{¶21} In her first assignment of error, mother asserts that M.G. should not have been adjudicated dependent and the juvenile court should not have put protective orders in place. But if error exists, mother invited that error.

{¶22} The "invited error" doctrine prohibits a party from taking advantage of an error that the party invited the trial court to make. *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998); *see In re S.P.*, 11th Dist. Lake Nos. 2011-L-038 and 2011-L-039, 2011-Ohio-4696, ¶ 57 (Mother's supplemental closing argument requested an open adoption if she lost custody of her child; on appeal, mother could not argue that trial court's recommendation for an open adoption was improper because the trial court adhered to her suggestion); *In re Medure*, 7th Dist. Columbiana No. 01 CO 3, 2002-Ohio-5035, ¶ 48 (On appeal, father argued that the trial court erroneously granted custody of his children to their oldest sibling because sibling had not formally moved for custody; court found father invited the error by signing an agreed entry joining the sibling as a defendant in the custody dispute.).

{¶23} The purpose of A.D.N. actions is for a court to gain jurisdiction over a family so that it may enter orders that protect a child's best interest. Here, at every step of the process—from the shelter-care hearing to the adjudicatory hearing to disposition—M.G.'s parents agreed that court intervention was in M.G.'s best interest.

{¶24} In December 2021, mother agreed to court intervention when she agreed to placing M.G. in JFS's interim custody. In January 2021, mother continued to agree to court intervention when she agreed to M.G. being placed with a relative. During the adjudicatory hearing, mother asked for M.G. to be remanded to her custody with protective orders. While she requested the order under Juv.R. 13, which governs temporary orders, the trial court did not rule on her motion during that hearing due to time constraints and, at the final hearing, mother did not withdraw her request for custody with protective orders. And mother did not object to the state's offer to remand custody with protective orders. Specifically, the state said:

> As has been discussed, the Agency has filed a case plan for temporary custody. The Agency would be willing to change its dispositional request to move to protective orders – to put protective orders in place.
> Those protective orders would include access to the home. And then the Agency would be requesting parents to articulate a plan for supervision of the -- of the child when [M.G.] and [D.G.] are in the home together including involving hours in which the children might be sleeping.

{¶25} Mother agreed to court intervention when she agreed with JFS taking temporary custody of M.G. and M.G. being placed with a relative. Then mother asked for custody of M.G. with temporary protective orders. Mother did not object to the state's offer to remand custody with protective orders. And during the disposition

7

hearing, the court asked all parties if there was agreement to protective orders. Mother, through counsel, stated that she concurred. Any error was invited.

{¶26} Mother's first assignment of error is overruled.

### B. Mother's second assignment of error is moot

{¶27} Mother argues in her second assignment of error that JFS failed to make reasonable efforts to prevent M.G.'s removal. Although mother agreed to removing M.G. from the home and did not object to the reasonable-efforts findings, we need not resolve this issue on plain error because it is moot.

{¶28} "It is the duty of this court 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions * * *.' " *In re Watts*, 4th Dist. Adams No. 97CA650, 1999 Ohio App. LEXIS 72, 4-5 (Jan. 11, 1999), quoting *State ex rel. Jennings v. Noble*, 49 Ohio St.3d 71, 74, 551 N.E.2d 128 (1990). Issues are moot when a party has "no legally cognizable interest in the outcome, or an event 'renders it impossible for the court to grant any relief' to an aggrieved party." *State v. Harris*, 1st Dist. Hamilton No. C-220251, 2023-Ohio-506, ¶ 19.

{¶29} Mother's second assignment of error is moot. The juvenile court remanded custody of M.G. to his parents and terminated the case in August 2022. There are no collateral consequences to a reasonable-efforts finding. Thus, mother has no legally cognizable interest in the outcome of this assignment of error. Moreover, because M.G.'s parents have custody over him, there is no relief that this court could offer to mother. Accordingly, this court lacks jurisdiction over this assignment of error. Therefore, the second assignment of error is dismissed.

### III. Conclusion

8

{¶30} For the reasons stated above, we dismiss the portion of the appeal involving reasonable efforts and affirm the remainder of the juvenile court's judgment.

Judgment affirmed in part and appeal dismissed in part.

**WINKLER, P.J.,** concurs.
**KINSLEY, J.,** concurs in part and dissents in part.

**KINSLEY, J.,** concurring in part and dissenting in part.

{¶31} I concur with the majority's disposition of the second assignment of error as moot. However, as to the first assignment of error, I dissent from the majority's thoughtful opinion in this difficult case for two reasons. First, I do not understand mother to have invited the juvenile court's finding that M.G. was dependent, but rather to only have sought temporary orders under Juv.R. 13, which are not predicated upon a finding of dependency. Thus, I do not agree with the application of the invited-error doctrine in this case. Second, after a thorough review of the record, I do not believe that clear and convincing evidence supports the juvenile court's finding that M.G. was a dependent child under R.C. 2151.04(C). I would therefore reverse the decision of the juvenile court finding M.G. to be dependent.

## I. Mother Did Not Invite the Trial Court's Error.

{¶32} The trial court held three hearings on JFS's dependency complaint. There was only one witness at all three hearings, JFS caseworker Christopher Herrick. Herrick's testimony was continued in progress across the first two hearings and concluded at the third hearing.

{¶33} At the beginning of the second hearing, there was considerable discussion by the attorneys and the magistrate as to the status of the interim orders in the case and the current placement of M.G., who was then living outside of his parents' home. The attorney for father requested unsupervised visits with M.G. for both

9

parents if the hearing did not conclude that day. The attorney for the guardian ad litem concurred with this request.

{¶34} The attorney for mother then requested that "custody be remanded to [mother] with orders of protective supervision." She did so, however, "based on Juvenile Rule 13 and based on the testimony that's gone on so far."

{¶35} Juv.R. 13 permits juvenile courts to enter temporary orders involving the custody and supervision of a child alleged to be dependent. *See* Juv.R. 13(B). It is triggered by the *filing* of a dependency complaint and does not require an adjudication. Juv.R. 13(B)(2). Courts have characterized orders entered under Juv.R. 13 as temporary and lasting in duration only during the litigation of the underlying complaint. *See, e.g., Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, 978 N.E.2d 146, ¶ 19, 22; *In re A.W.*, 11th Dist. Geauga No. 2012-G-3122, 2013-Ohio-4096, ¶ 16. Considering these characteristics, Juv.R. 13 therefore provides limited, interim authority to juvenile courts to issue orders that expire once the complaint is finally adjudicated.

{¶36} Mother's counsel sought a remand of custody and protective orders under Juv.R. 13. She therefore sought only a temporary order limited to the period of time that the case was pending in juvenile court. By rule, this request was necessarily separate from a finding that M.G. was dependent, as Juv.R. 13 does not require an adjudication before a temporary order is issued.

{¶37} As a result, mother did not invite a finding that M.G. was dependent. Temporary orders issued under Juv.R. 13 do not require a finding of dependency, and mother's request for protective orders and a custody remand was limited to that rule.

**{¶38}** For these reasons, I would not apply the invited-error doctrine in this case and would not overrule mother's first assignment of error on this basis.

## II. The Trial Court's Finding of Dependency Was Not Supported by Clear and Convincing Evidence.

**{¶39}** JFS filed a complaint alleging that M.G. was dependent based on two subsections of the dependency statute. More specifically, JFS contended that M.G. was a dependent child as defined by R.C. 2151.04(B) and (C), which state:

> As used in this chapter, "dependent child" means any
>
> child:
>
> (B) Who lacks adequate parental care by reason of the
>
> mental or physical condition of the child's parents,
>
> guardian, or custodian;
>
> (C) Whose condition or environment is such as to warrant
>
> the state, in the interests of the child, in assuming the
>
> child's guardianship[.]

**{¶40}** At the hearing, JFS essentially abandoned its complaint as to the (B) subsection and presented no evidence or argument regarding the parents' mental or physical condition. Notably, neither the magistrate nor the juvenile court made any findings regarding the parents' mental or physical condition, nor did they attempt to justify their determinations that M.G. was dependent based on this subsection.

**{¶41}** What limited evidence JFS presented went specifically to the allegation that M.G.'s environment warranted the state in assuming his guardianship under R.C. 2151.04(C).

**{¶42}** An adjudication of dependency under R.C. 2151.04 must be supported by clear and convincing evidence. Juv.R. 29(E)(4). Clear and convincing evidence is

11

evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction of the facts sought to be established. *In re Walling*, 1st Dist. Hamilton No. C-050646, 2006-Ohio-810, ¶ 15.

{**¶43**}  In contrast to the (B) subsection of R.C. 2151.04, which focuses on the parents' fitness to parent, the (C) subsection takes into account other factors.  For example, in considering an allegation that a child's environment warrants a finding of dependency, the focus is on the condition of the child, not the fault of the parents.  *Id.* at ¶ 16.  In addition, where the allegation of an unsafe environment is predicated upon the concern that a parent will not abide by court orders, courts may not presume that a child will be harmed.  *Id.* at ¶ 18, citing *In re Burrell*, 58 Ohio St.2d 37, 39, 388 N.E.2d 738 (1979).  Instead, the negative impact to a child from the parent's inability or refusal to comply with a court order must be proven in a clear and convincing manner.  *Id.*

{**¶44**}  In *In re Walling*, this court reversed a dependency finding under R.C. 2151.04(C) under these principles.  In that case, Walling's minor son had been initially adjudicated dependent following her convictions for driving under the influence, leaving the scene of an accident, and child endangering.  *Id.* at ¶ 2.  Her son was later returned to her custody with protective orders, including the requirements that she partake in counseling, undergo weekly urine screens, and attend Alcoholics Anonymous and Narcotics Anonymous meetings.  *Id.*  When she failed to comply with these orders, her son was again adjudicated dependent and removed from her custody.  *Id.* at ¶ 2, 7.

{**¶45**}  At the adjudicatory hearing, much of JFS's case focused on Walling's failure to comply with the protective orders.  *In re Walling*, 1st Dist. Hamilton No. C-

12

050646, 2006-Ohio-810, at ¶ 18. This court noted that Walling's noncompliance was demonstrated by clear and convincing evidence. *Id.* But there was no proof as to how Walling's failure to follow the terms of the protective orders negatively impacted her son's environment, if at all. *Id.* This lack of evidence of harm was fatal to a determination that her son was dependent under R.C. 2151.04(C).

{¶46} For similar reasons, the Third District reversed a finding of dependency based on the presence of the child's biological mother, who was suicidal and mentally unstable, in his home in *In re G.C-O*, 3d Dist. Seneca No. 13-12-56, 2013-Ohio-4974, ¶ 11. There, the court determined it was the state's burden to prove by clear and convincing evidence what "detrimental impact" existed in G.C-O's environment as a result of the relationship with his mother and that such evidence was lacking in the case. *Id.* The court also held that most of the state's concerns with mother's presence were speculative and that the trial court was "merely inferring what could happen." *Id.* This was insufficient to sustain the dependency finding on appeal. *Id.*

{¶47} JFS's case here suffers from the same problems identified in *In re Walling* and *In re G.C-O.*

{¶48} The entirety of the evidence JFS presented as to M.G.'s environment came through Herrick's testimony. At all three hearings, Herrick's testimony in this regard was highly speculative and lacked detail. This argument was raised by mother at the hearing, when her counsel cited *In re Burrell* and argued that there must be specific facts rather than a general inference to support a dependency finding based on environmental risk under R.C. 2151.04(C).

**{¶49}** At the first hearing, Herrick testified that JFS was concerned about M.G.'s environment because forcible sexual contact was alleged to have occurred there. This alleged sexual contact was between two other juveniles that resulted in criminal charges against M.G.'s brother, D.G., and did not involve M.G.[1] Herrick never explained how M.G. was harmed by his mere presence in the home at the time a criminal act supposedly took place and in fact testified repeatedly that M.G. denied observing or witnessing any part of the offense.

**{¶50}** As explained in *In re G.C-O*, it was JFS's burden to demonstrate the detrimental impact to M.G. of his presence in a home where someone else committed an alleged crime. *See In re G.C-O*, 3d Dist. Seneca No. 13-12-56, 2013-Ohio-4974, at ¶ 11. JFS put on no evidence, other than inviting speculative inferences, as to how presence in a home where an alleged crime occurred necessarily harms a child who resides in the home.

**{¶51}** At both the first and second hearings, Herrick also testified that JFS was concerned about M.G.'s environment because his parents supported D.G.'s denial of the delinquency charges. Yet again, JFS failed to present any clear and convincing evidence, as required by *In re Walling* and *In re G.C-O*, to demonstrate how the parents' support of D.G. presented any specific harm to M.G. *See In re Walling*, 1st Dist. Hamilton No. C-050646, 2006-Ohio-810, at ¶ 18; *In re G.C-O*, 3d Dist. Seneca No. 13-12-56, 2013-Ohio-4974, at ¶ 11. In fact, when asked to identify what adverse effect there has been on M.G., Herrick indicated that he was "not qualified to make a judgment on that." And there was no other evidence presented on the point.

---

[1] D.G. has now been adjudicated delinquent, but at the time of the dependency proceeding involving M.G., the sexual-assault accusations against D.G. were merely allegations, and the proof in M.G.'s dependency case rightfully treated them as such.

14

**{¶52}** In place of actual evidence, JFS invited the inference that, by standing by D.G.'s defense in the delinquency proceeding, the parents turned a blind eye to D.G.'s propensity for sexual abuse, thereby creating a risk that M.G. might also be victimized by his brother. But this exercise in conjecture very much crossed the line.

**{¶53}** For one thing, D.G. enjoyed certain constitutional rights before his adjudication. *See In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 3686 (1970). These include the presumption of innocence, the ability to enter a denial plea, and the requirement that the state prove his guilt beyond a reasonable doubt. *Id.*; Juv.R. 29(C). It constrains logic and the bounds of the law to see how M.G.'s parents would have created a risk to his environment by supporting what the Constitution requires for D.G.

**{¶54}** For another thing, JFS implied that the parents' support of D.G. necessarily created a risk to M.G. Not so. Parents can support one child through a legal process without automatically placing another child in danger. Moreover, it was JFS's burden to show the demonstrable harm that existed to M.G., rather than to invite a presumption of harm. This JFS failed to do.

**{¶55}** On this point, Herrick's testimony at the third hearing is instructive. At that hearing, Herrick testified to JFS's concern that D.G. had been released from custody in his delinquency case under a court order that he not be around children under 12 absent adult supervision.[2] Without identifying any specific incident or reason, Herrick expressed a concern that the parents would violate the order and not adequately supervise D.G. But Herrick's own experience belied this concern.

---

[2] M.G. was 11 years old at the time.

{¶56} Herrick only visited M.G.'s home once during the duration of this case. When he did, mother affirmed her understanding that D.G. was not to be around children under the age of 12 unsupervised. During the visit, both mother and D.G. were sitting in the living room together, suggesting that mother was closely supervising D.G.

{¶57} Across the three hearings in this case, no witness testified to the detrimental impact to M.G. of D.G.'s presence in the home, either when he was alleged to have committed a sexual assault or during the period of time when he was released by the juvenile court during his delinquency case with orders that he not be in the presence of children under 12 unsupervised by an adult. To the contrary, Herrick testified that he could not identify any adverse effect on M.G. in this case, because he was not qualified to do so.

{¶58} Caselaw is clear that we cannot presume or infer an environmental impact under R.C. 2151.04(C). *See In re Walling*, 1st Dist. Hamilton No. C-050646, 2006-Ohio-810, at ¶ 18; *see also In re A.V.*, 12th Dist. Warren Nos. CA2021-04-030, CA2021-04-031, CA2021-04-032 and CA2021-04-033, 2021-Ohio-3873, ¶ 23 (reversing dependency finding under R.C. 2151.04(C) because JFS failed to prove that parents' drug use in the home adversely impacted the children). Rather, JFS must prove such an impact with clear and convincing evidence. *In re Walling* at ¶ 18. It is possible that the presence of a sibling accused of a sexually oriented offense may present such an impact in a particular case. In fact, it may have presented such an impact here. But JFS has not proven that it did, and in the absence of such proof, I am unwilling to simply infer harm to M.G.

**{¶59}** For these reasons, I would reverse the finding of dependency in this case.

Please note:

The court has recorded its entry on the date of the release of this opinion.